IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

JACQUELINE S. MACPHERSON,

Plaintiff,

vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

Defendant.

No. C10-0163

RULING ON JUDICIAL REVIEW

## TABLE OF CONTENTS

I.  *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.  *PROCEDURAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  *PRINCIPLES OF REVIEW* . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.  *FACTS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    *A.*  *MacPherson's Employment Background* . . . . . . . . . . . . . . . . 5
    *B.*  *Administrative Hearing Testimony* . . . . . . . . . . . . . . . . . 5
        *1.*  *MacPherson's Testimony* . . . . . . . . . . . . . . . . . 5
        *2.*  *Vocational Expert Testimony* . . . . . . . . . . . . . . . . 8
    *C.*  *MacPherson's Medical History* . . . . . . . . . . . . . . . . . . . 9

V.  *CONCLUSIONS OF LAW* . . . . . . . . . . . . . . . . . . . . . . . . 14
    *A.*  *ALJ's Disability Determination* . . . . . . . . . . . . . . . . . . 14
    *B.*  *Objections Raised By Claimant* . . . . . . . . . . . . . . . . . . 16
        *1.*  *Listing § 14.07* . . . . . . . . . . . . . . . . . . . . . . 16
        *2.*  *Nebulizer and Frequent Absences* . . . . . . . . . . . . . . 20

VI.  *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

VII.  *ORDER* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

## I.  INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Jacqueline S. MacPherson on December 22, 2010, requesting judicial review of the Social Security Commissioner's decision to deny her application for Title II disability insurance benefits.  MacPherson asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide her disability insurance benefits.  In the alternative, MacPherson requests the Court to remand this matter for further proceedings.

## II.  PROCEDURAL BACKGROUND

On March 7, 2007, MacPherson applied for disability insurance benefits.  In her application, MacPherson alleged an inability to work since January 1, 2005 due to immune deficiency disease, migraine headaches, epilepsy, tremors, severe infections, depression, fatigue, and pain in the face, ears, head, and throat.  MacPherson's application was denied on May 1, 2007.  On October 24, 2007, her application was denied on reconsideration.  On November 15, 2007, MacPherson  requested an administrative hearing before an Administrative Law Judge ("ALJ").  On August 26, 2008, MacPherson appeared via video conference with her attorney before ALJ Jo Ann L. Draper for an administrative hearing.  MacPherson and vocational expert Vanessa May testified at the hearing.  In a decision dated October 8, 2008, the ALJ denied MacPherson's claim.  The ALJ determined that MacPherson was not disabled and not entitled to disability insurance benefits because she was functionally capable of performing her past relevant work as a cashier.  MacPherson appealed the ALJ's decision.  On October 22, 2010, the Appeals Council denied MacPherson's request for review.  Consequently, the ALJ's October 8, 2008 decision was adopted as the Commissioner's final decision.

On December 22, 2010, MacPherson filed this action for judicial review.  The Commissioner filed an answer on May 5, 2011.  On June 7, 2011, MacPherson filed a brief arguing that there is not substantial evidence in the record to support the ALJ's

finding that she was not disabled and could perform her past relevant work as a cashier. On August 5, 2011, the Commissioner filed a responsive brief arguing the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On August 16, 2011, MacPherson filed a reply brief. On March 16, 2011, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

### III.  PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review.  42 U.S.C. § 405(g).  42 U.S.C. § 405(g) provides the Court with the power to:  "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).  "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ."  *Id.*

The Court will "affirm the ALJ's decision if it is supported by substantial evidence on the record as a whole."  *Gates v. Astrue*, 627 F.3d 1080, 1082 (8th Cir. 2010) (citation omitted).  Evidence is "substantial evidence" if a reasonable person would find it adequate to support the ALJ's determination.  *Id.* (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)); *see also Wildman v. Astrue*, 596 F.3d 959, 963-64 (8th Cir. 2010) ("'Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.'  *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000).").

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted).  The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision.  *Moore v. Astrue*, 623 F.3d 599, 602 (8th Cir. 2010);

*see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Casey v. Astrue*, 503 F.3d 687 (8th Cir. 2007), the Eighth Circuit further explained that a court "will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 691 (citations omitted). "A decision is not outside that 'zone of choice' simply because [a court] may have reached a different conclusion had [the court] been the fact finder in the first instance." *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006). Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams*, 393 F.3d at 801 (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman*, 596 F.3d at 964 ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## IV.  FACTS

### A.  MacPherson's Employment Background

MacPherson was born in 1977.  The record contains a detailed earnings report for MacPherson.  The report covers MacPherson's employment history from 1990 to 2008. From 1993 to 2002, she earned between $994.06 (1993) and $25,504.35 (1999).  She had no earnings in 2003.  She earned $1,890.83 in 2004, $4,042.14 in 2005, and $1,155.38 in 2006.  She has no earnings since 2007.

### B.  Administrative Hearing Testimony

#### 1.    MacPherson's Testimony

At the administrative hearing, MacPherson's attorney asked MacPherson to discuss her most severe medical problem.  According to MacPherson, her most severe medical problem is migraine headaches.  Specifically, MacPherson testified that:

A:   I would say, the most severe right now, is my migraines.  I have had a continuous one for three-and-a-half weeks now.

Q:   And what, how do you feel when you have a migraine? What, what are your symptoms?

A:   Most of my symptoms are severe pain, nausea, double-vision.  I have to stay in a dark room with no noises. I can't drive.

Q:   Okay, so did you drive here today?

A:   Today, I did because today is not as bad of a day as normal.

Q:   What, how do you get rid of the headaches if you can?

A:   In the past, I would have medicine to take when an onset of a migraine would happen right now, the medicine is making me worse.  So, the doctor has taken me off of it, and just kind of seeing how my body reacts; and right now the migraines are getting worse. So, in the next couple of days, they'll hopefully be putting me on something. . . .

Q:   So, how do you get over it?  Other than the -- if you have to go to the emergency room, what happens? Other than that what else can you do?

> A:   Right now, nothing.  Sleeping will help sometimes.
> It'll relieve some of the pressure.  For the most part,
> nothing helps.  I just have been dealing with it.

(Administrative Record at 36-37.)  MacPherson stated that the migraines limit her ability

to concentrate, and cause her to be sensitive to noise and light.  When suffering a

migraine, MacPherson indicated that she generally rests in a dark room with very little

noise.

MacPherson's attorney also asked MacPherson to describe her difficulties with

immune deficiency problems:

> Q:   Does -- how does this immune deficiency affect your
> ability to function?  How does that impact you?
>
> A:   It has impacted me quite a bit.  I am sick everyday.  I
> have bronchitis.  I have ear infections.  I have sinus
> problems.  I'm in pain everyday.  I have never been
> well in the last several years.
>
> Q:   When you say you've been sick everyday, tell me what
> that means.
>
> A:   For instance right now, I can without even having to go
> to the doctor, I know I have a least one ear infection, if
> not a bilateral ear infection.  I have a sinus infection,
> and then of course when I have sinus infection from all
> the drainage, it causes problems with my bronchitis, so
> I have a problem with that as well, and all of that
> coughing and pain, sinus pain causes more problems
> with my migraines.
>
> Q:   So, it's sort of like a never-ending-circle, is that right?
>
> A:   Yes.
>
> Q:   I mean you're just fighting one -- you have one thing
> and then something else pops up?
>
> A:   Yes, and no antibiotic has helped.
>
> Q:   What, I mean you've been on strong antibiotics?
>
> A:   Very strong antibiotics, and it doesn't do anything, if
> not I get sicker.
>
> Q:   Do your medicines cause side-effects, is that what
> you're saying?  In other words, the antibiotics will
> make you worse?

> A:    Yes, yeah, the antibiotics they've put me on can cause
>        me to get worse, like pneumonia or anything more
>        severe.  It doesn't -- the goal is for me to be on
>        antibiotics to protect me, but it doesn't.

(Administrative Record at 39-40.)

Next, MacPherson testified that she suffers from low-back pain.  MacPherson indicated that due to the problems with her low-back, she is limited in her ability to stand for long periods of time, lift anything without pain, and bend.  When asked by her attorney to describe her most comfortable postural position, MacPherson responded that she could sit for "a little while" in a comfortable chair, but she preferred laying down.  She stated that she lies down about three-fourths of every day.  MacPherson also testified that she uses a nebulizer everyday.  MacPherson's attorney asked MacPherson to explain her use of the nebulizer:

> Q:    How often are you using [the nebulizer]?
> A:    Lately, everyday.
> Q:    More than once a day?
> A:    The nebulizer I've been using about four times a day.
> Q:    How much, what's the time that it takes to run the
>        nebulizer and recover from that?
> A:    The nebulizer takes about a half-an-hour each time I do
>        it.
> Q:    So, are you spending at least two hours a day?  You
>        take it four times?
> A:    Yes.

(Administrative Record at 44.)

Lastly, MacPherson's attorney asked MacPherson to describe her typical day:

> Q:    . . . So, what's an average day like for you?  What --
>        do you have a routine that you always try and follow?
> A:    I try to.  I try not to stay in bed or [at] least sleep all the
>        time because I know that, that can be bad for you.  I try
>        to get up around 9:00 or 10:00 in the morning.  I try
>        not to be too much later than that.  I do have a dog.
>        So, I take care of my dog, but you know, I just let her
>        out.   There's -- you know I don't even walk her

> anymore.  I might read some e-mails or pay some bills.
> Pretty much that's it.  I don't -- I just rest most of the
> time.

Q:    Is your stamina reduced compared to when you worked
       full-time?

A:    Definitely.  I was definitely more active when I was
       working and I didn't have problems you know, like I do
       now, and I wasn't as tired all the time, and I could do
       more.

(Administrative Record at 45-46.)

### 2.    *Vocational Expert Testimony*

At the hearing, the ALJ provided vocational expert Vanessa May with a
hypothetical for an individual who is:

> limited to light exertional work where she could lift and carry
> no more than twenty pounds occasionally, up to ten pounds
> frequently.  Stand and walk six hours in an eight-hour day.  Sit
> up to six hours in an eight-hour day.
>
> This individual could only occasionally climb, bend, balance,
> stoop, knee [*sic*], crouch, and crawl.  This individual could
> only occasionally be exposed to pulmonary irritants such as
> odors, dust, gases, fumes.  This individual should not be
> exposed to any hazardous working conditions, such as working
> around heights or moving machinery.  This individual should
> never climb ropes, scaffolds, or ladders.

(Administrative Record at 52).  The vocational expert testified that under such limitations,
MacPherson could perform her past relevant work as an administrative assistant, cashier,
customer service representative, and telemarketer.  The ALJ asked the vocational expert
a second hypothetical where the individual is limited:

> to the sedentary level of exertion, where this individual could
> lift and carry no more than ten pounds at a time, less than ten
> pounds frequently, up to ten pounds occasionally.  Stand and
> walk two hours in an eight-hour day.  Could sit up to six hours
> in an eight-hour day.

8

(Administrative Record at 53.) The vocational expert testified that under such limitations, MacPherson could perform her past relevant work as an administrative assistant, customer service representative, and telemarketer. Next, the ALJ added "only occasional interaction with the public and occasional interaction with co-workers," as limitations to the foregoing hypotheticals.[1] The vocational expert testified that under such limitations, MacPherson could perform her past relevant work as an administrative assistant and cashier. The ALJ also asked the vocational expert to assume the same hypotheticals with the additional limitation of only being able to perform unskilled work. The vocational expert testified that under such limitations, MacPherson could perform her past relevant work as a cashier. Lastly, the ALJ asked the vocational expert whether MacPherson could find employment if she missed three or more days of work per month due to pain. The vocational expert testified that under such a limitation, MacPherson would be precluded from full-time competitive employment.

### C. MacPherson's Medical History

On May 18, 2004, a non-examining consultative doctor reviewed MacPherson's medical records and provided Disability Determination Services ("DDS") with a physical residual functional capacity ("RFC") assessment for MacPherson. The doctor determined that MacPherson could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for about six hours in an eight-hour workday, (4) sit with normal breaks for about six hours in an eight-hour workday, and (5) push and/or pull without limitations. The doctor also determined that MacPherson could occasionally climb, balance, stoop, kneel, crouch, and crawl. The doctor found no manipulative, visual, communicative, or environmental limitations.

On March 9, 2005, MacPherson met with Dr. Lynne O. Geweke, M.D., complaining of problems with headaches. Dr. Geweke reviewed MacPherson's history of headaches:

---

[1] *See* Administrative Record at 53.

> MacPherson is a 27 year-old right-handed woman who is seen for headaches off and on since her mid teens. They became more severe around the end of 2003 and she has some level of headache every day. Every one or two weeks the headache increases for three or four days; at the worse they are 10/10 on a pain scale, and at best 4-5/10. Her last headache free day was probably eight or nine months ago at a minimum. When the headaches become more severe she may have an aura of pinkish or reddish spots, and her neck starts to hurt. The headache itself is felt occipitally and in the left face and neck. It is pounding, worsened by movement, accompanied by nausea and vomiting, and by photophobia and phonophobia.

(Administrative Record at 562.) Upon examination, Dr. Geweke diagnosed MacPherson with chronic migraine headaches. Dr. Geweke noted that several factors affect her headache disorder, including a sleep disorder and morbid obesity. Specifically, Dr. Geweke opined that MacPherson "is morbidly obese and has bad sleeping patterns with much shortened hours; the likelihood of sleep apnea is fairly high. Even in the absence of sleep apnea, morbid obesity appears to correlate with an increased risk of chronic headaches."[2] Dr. Geweke recommended medication as treatment.

On December 7, 2006, MacPherson was referred to Dr. Nicholas Zavazava, M.D., for consultation regarding immune deficiency. Dr. Zavazava noted that MacPherson's medical history included multiple sinus infections each year, bronchitis three to four times per year, and pneumonia about once per year. Dr. Zavazava also noted that antibiotics do not help MacPherson with her sinus infections. Upon examination, Dr. Zavazava diagnosed MacPherson with allergic rhinitis mixed with chronic rhinitis and chronic sinus disease. Dr. Zavazava was concerned that MacPherson might have an underlying immune deficiency, and prescribed a rotation of antibiotics to test her immune system.

On March 1, 2007, MacPherson had a follow-up appointment with Dr. Zavazava regarding possible immune deficiency problems. Dr. Zavazava noted that in the three

---

[2] *See* Administrative Record at 564.

months since her first appointment, MacPherson had been diagnosed with influenza A and pneumonia as an outpatient. She was treated with Erythromycin. She also had 5 or 6 ear infections. Dr. Zavazava further noted that MacPherson did not think that the antibiotics did anything for her. Upon examination, Dr. Zavazava diagnosed MacPherson with antibody deficiency with normal immunoglobulins, NK cell deficiency, and recurrent infections. Dr. Zavazava recommended IVIG as treatment.[3]

On April 30, 2007, Dr. Laura Griffith, D.O., reviewed MacPherson's medical records and provided DDS with a physical RFC assessment for MacPherson. Dr. Griffith determined that MacPherson could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for about six hours in an eight-hour workday, (4) sit with normal breaks for about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Griffith also determined that MacPherson could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. Dr. Griffith found no manipulative, visual, or communicative, limitations, but indicated that MacPherson should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation, and avoid concentrated exposure to hazards, such as machinery and heights. Lastly, Dr. Griffith noted that:

> [MacPherson] currently engages in the work like activities of selling items on the Internet and selling Tupperware. She cares for her children every two weeks presumably when she has custody. She has no problems with personal care activity. She does some light house work. Despite her seizure disorder she drives. She self limits lifting to 15 pounds due to back pain. No ongoing treatment for back pain is noted.

(Administrative Record at 614.)

---

[3] IVIG stands for "intravenous immunoglobulin," a blood product that is administered intravenously to treat immune deficiencies, autoimmune diseases, and acute infections. *See* http://en.wikipedia.org/wiki/Intravenous_immunoglobulin

On August 28, 2007, Dr. Sandra Davis, Ph.D., reviewed MacPherson's medical records and provided DDS with a Psychiatric Review Technique and mental RFC assessment for MacPherson.  On the Psychiatric Review Technique assessment, Dr. Davis diagnosed MacPherson with depression and anxiety disorder.  Dr. Davis determined that MacPherson had the following limitations:  mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace.  On the mental RFC assessment, Dr. Davis determined that MacPherson was moderately limited in her ability to:  carry out detailed instructions, maintain attention and concentration for extended periods, and respond appropriately to changes in the work setting.  Dr. Davis concluded that:

> the bulk of the [medical evidence] in file involves her physical medical problems, with depressive and anxious symptoms given far less attention.  Nonetheless, she has been treated relatively successfully with medications.  While intermittently complaining of concentration problems, she has been able to work on college classes at times, sustain computer conversations, and follow instructions.  She may need preparation for rapid or complex change.

> The medical evidence is consistent.  [MacPherson's] allegations are credible to the extent she has had a few emotional problems intermittently.

(Administrative Record at 646.)

On September 11, 2007, MacPherson was referred by DDS to Dr. Michael C. March, Ph.D., for a mental status evaluation.  MacPherson reported having difficulty with depression and anxiety.  Specifically, she stated that her:

> energy is typically pretty low. Her concentration is diminished and she has been quite distractible. . . .

> She acknowledged constant worrying and anxiety often over matters including her health, financial responsibilities, the welfare of her family members as well as her future.  She has panic attacks about twice per week.  She avoids going out of

12

> the home other than to go to the grocery store.  She is very
> easily overwhelmed.

(Administrative Record at 662.)  MacPherson described her typical day as follows:

> On a typical day, [she] gets up at about 10:00 a.m. to 10:30
> a.m. and will do 'a load or two of laundry.'  She then does
> some cleaning and stated that this does take some time due to
> her back and shoulder pain.  She will then eat lunch and go for
> a walk, check her e-mails, and pay bills.   She rests
> intermittently throughout the afternoon.  She usually does not
> drive as she stated she is too 'shaky' due to her anxiety. . . .
> She typically does not socialize very much with others though
> once per week she will spent [sic] time with a friend.

(Administrative Record at 662.)  Upon examination, Dr. March diagnosed MacPherson

with major depressive disorder, recurrent, severe intensity, and panic disorder with

agoraphobia.  Dr. March concluded that:

> MacPherson presents with primary concerns associated with
> her physical health.  I would defer to her medical providers
> regarding the impact of those issues on her functional capacity.
> She has noteworthy depression and anxiety though at present
> is not engaged in treatment due to her financial
> constraints. . . .  Based on our interaction today, I would
> anticipate that [MacPherson] would have mild problems with
> her memory and understanding instructions, procedures, and
> locations. . . .  She would be capable of appropriate
> interpersonal interactions whether with supervisors,
> coworkers, or the public.  Her judgment appears to be
> reasonable and she would likely have only mild problems
> coping with change in the work place.

(Administrative Record at 664.)

On February 28, 2008, MacPherson returned to Dr. Zavazava for evaluation and

management of antibody deficiencies.  Dr. Zavazava noted that:

> An extensive immunodeficiency workup has revealed only
> specific antibody deficiency with normal immunoglobulins.
> She was started on rotating antibiotics in addition to IVIG for
> 6 months.   She did not have any improvement in her

> symptoms with either therapy. . . .   She has not noted
> improvement with prophylactic antibiotics.

(Administrative Record at 684.) Upon examination, Dr. Zavazava diagnosed MacPherson
with a variety of symptoms including cough, greenish sputum, fevers and chills, and
various complaints related to sinus pressure, fatigue, and feeling depressed. Dr. Zavazava
concluded that:

> Ms. Macpherson [sic] has specific antibody deficiency with
> normal immunoglobulins.   However, she does not report
> documented infections.   The only symptoms that could be
> related to an infectious etiology are really specific to her lungs.
> We have attempted therapy with rotating antibiotics, as well as
> IVIG for 6 months, and these have not improved her
> symptoms.  In addition, she does not report improvement of
> her symptoms on rescue antibiotics which were prescribed for
> her at various times by her primary care provider.  As such,
> we do not believe that her symptoms are due to an immune
> deficiency or to recurrent infections. . . .
>
> At this point in time, since we do not believe that there is an
> immunodeficiency underlying her symptoms, we will stop
> prophylactic antibiotics.

(Administrative Record at 686.)

## V.  CONCLUSIONS OF LAW

### A.  ALJ's Disability Determination

The ALJ determined that MacPherson is not disabled.   In making this
determination, the ALJ was required to complete the five-step sequential test provided in
the social security regulations.  *See* 20 C.F.R. § 404.1520(a)-(g); *Bowen v. Yuckert*,
482 U.S. 137, 140-42 (1987); *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010);
*Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010).   The five steps an ALJ must
consider are:

> (1) whether the claimant is currently engaged in any substantial
> gainful activity; (2) whether the claimant has a severe
> impairment; (3) whether the impairment meets or equals an

14

impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Appendix"); (4) whether the claimant can return to [his or] her past relevant work; and (5) whether the claimant can adjust to other work in the national economy.

*Moore*, 572 F.3d at 523 (citing 20 C.F.R. § 404.1520(a)(4)(i)-(v)). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005), in turn quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)).

In order to establish a disability claim, "[t]he claimant bears the burden of demonstrating an inability to return to [his or] her past relevant work." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (citing *Steed v. Astrue*, 524 F.3d 872, 875 n.3 (8th Cir. 2008)). If the claimant meets this burden, the burden of proof then shifts to the Commissioner to "show [that] the claimant is capable of performing other work." *Id*. In order to show that a claimant is capable of performing other work, the Commissioner must demonstrate that the claimant retains the residual functional capacity ("RFC") to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998) (citing *Reed v. Sullivan*, 988 F.2d 812, 815 (8th Cir. 1993)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 404.1545. "'It is the ALJ's responsibility to determine [a] claimant's RFC based on all the relevant evidence, including medical records, observations of treating physicians and others, and [the] claimant's own description of her limitations.'" *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (quoting *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007)); 20 C.F.R. § 404.1545.

The ALJ applied the first step of the analysis and determined that MacPherson had not engaged in substantial gainful activity since January 1, 2005. At the second step, the

ALJ concluded from the medical evidence that MacPherson had the following severe combination of impairments: epilepsy, migraine headaches, immune antibody deficiency, obesity, right foot pain, sinusitis, bronchitis, sleep apnea, pinched nerve in neck, low back, and depression.   At the third step, the ALJ found that MacPherson did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined MacPherson's RFC as follows:

> [MacPherson] has the residual functional capacity to lift and carry no more than 20 pounds occasionally and 10 pound frequently; stand and walk 6 hours in an 8 hour day; sit 6 hours in an 8 hour day; only occasionally climb, bend, balance, stoop, crouch, kneel, crawl; only experience occasional exposure to pulmonary irritants such as odors, dust, gases, and fumes; avoid exposure to hazardous conditions such as heights or moving machinery; never climb ladders, ropes, or scaffolds; and perform only simple, routine, repetitive tasks (duties which could be learned in less than 30 days) involving only occasional contact with co-workers and the public.

(Administrative Record at 20.)   Also at the fourth step, the ALJ determined that MacPherson was capable of performing her past relevant work as a cashier.   Therefore, the ALJ concluded that MacPherson was not disabled.

### B.  Objections Raised By Claimant

MacPherson argues that the ALJ erred in three respects.   First, MacPherson argues that she is presumptively disabled as her impairments meet or equal Listing § 14.07. Second, MacPherson argues that the ALJ's RFC assessment and hypothetical question to the vocational expert were flawed because the ALJ failed to address her need to be away from her workstation at unscheduled times for up to 30 minutes to use her nebulizer. Lastly, MacPherson argues that the ALJ failed to consider her need for frequent absences due to the combination of her impairments.

### 1.   Listing § 14.07

MacPherson argues that she is presumptively disabled because her impairments meet Listing § 14.07.   According to 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 14.00E(2), non-

HIV immune deficiency disorders are documented by medical evidence that includes "documentation of the specific type of immune deficiency. Documentation may be by laboratory evidence or by other generally acceptable methods consistent with the prevailing state of medical knowledge and clinical practice." *Id*. A claimant meets Listing § 14.07 if he or she can show documented medical evidence of:

> A.   One or more of the following infections.   The infection(s) must either be resistant to treatment or require hospitalization or intravenous treatment three or more times in a 12-month period.
>> 1. Sepsis; or
>> 2. Meningitis; or
>> 3. Pneumonia; or
>> 4. Septic arthritis; or
>> 5. Endocarditis; or
>> 6. Sinusitis documented by appropriate medically acceptable imaging.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 14.07(A). MacPherson maintains that "the ALJ failed to ever mention Listing§ 14.07 and failed to determine whether any or all of the incidents cited above constituted a 'resistant' infection." MacPherson asserts that "[t]he ALJ's decision should be reversed and this matter remanded for further proceedings, including a determination of whether Ms. MacPherson's condition meets or equals Listing § 14.07."[4]

Contrary to MacPherson's argument, the Commissioner asserts that the ALJ *did* consider the Listings with regard to MacPherson's immune system disorders. Specifically, the Commissioner argues that:

> In her decision, the ALJ noted that she considered the adult mental impairment Listings, as well as Listings 1.00ff,

---

[4] *See* MacPherson' Brief (docket number 11) at 15-16. In her brief, MacPherson points out that she was diagnosed with sinusitis four times in 2005. *See* Administrative Record at 534, 537, 542, 544. MacPherson was also diagnosed with pneumonia in 2005. *Id*. at 543. In 2006, MacPherson was diagnosed with sinusitis twice. *Id*. at 456-61, 527. In 2007, MacPherson was diagnosed with sinusitis four times. *Id*. at 519, 521, 628, 801.

> musculoskeletal disorders; 3.00ff, respiratory disorders;
> 11.00ff, neurological disorders, including epilepsy; and
> 13.00ff, which is the Listing category for malignant neoplastic
> disease. [MacPherson] has not claimed disability related to
> cancer, nor is there any evidence of malignant neoplastic
> disease in the record. It appears that the ALJ intended to
> reference the Listings at 14.00ff, immune system disorders,
> rather than the Listings for cancer at 13.00ff, given her finding
> that [MacPherson] had a severe impairment of immune
> antibody deficiency. . . . Contrary to [MacPherson's]
> assertion, it appears that the ALJ specifically considered the
> Listings at 14.00ff.

*See* Commissioner's Brief (docket number 12) at 17. The Commissioner also argues that even if the ALJ failed to consider Listing § 14.07, the medical evidence in the record does not support a finding that MacPherson meets or equals that Listing.

In her reply brief, MacPherson contends that the Commissioner's argument that the ALJ mistakenly cited 13.00ff instead of 14.00ff when discussing the Listing sections she considered in making her disability determination, constitutes nothing more than mere speculation. The Court agrees with the Commissioner that the only logical explanation for the ALJ mentioning that she considered Listing 13.00ff – a listing dealing with cancer-related impairments, which have no bearing on MacPherson's claim for disability benefits – is that she intended to state that she considered Listing 14.00ff, a listing dealing with immune deficiency impairments, which MacPherson claims to suffer from. In other words, the Court believes that the ALJ's statement that she gave consideration to listing 13.00ff is a typographical error, and she intended to write that she gave consideration to listing 14.00ff. Accordingly, the Court will not remand this matter simply because the ALJ's decision states that she gave consideration to Listing 13.00ff instead of Listing 14.00ff. *See Hepp v. Astrue*, 511 F.3d 798, 806 (8th Cir. 2008) ("We have held that 'an "arguable deficiency in opinion-writing technique" does not require us to set aside an administrative finding when that deficiency had no bearing on the outcome.' *Robinson v. Sullivan*, 956 F.2d 836, 841 (8th Cir. 1992).").

18

Turning to the medical evidence in the record, the Court finds that MacPherson has not met her burden of establishing that she meets or equals Listing § 14.07. *See McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) ("To qualify for disability under a listing, a claimant carries the burden of establishing that his [or her] condition meets or equals all specified medical criteria. *Marciniak v. Shalala*, 49 F.3d 1350, 1353 (8th Cir. 1995)."). Specifically, MacPherson has failed to show that she suffered from any of the infections listed in § 14.07, particularly pneumonia and sinusitis, three or more times in a 12-month period where she has been resistant to treatment or required hospitalization or intravenous treatment. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 14.07(A). While there is evidence that MacPherson was diagnosed with sinusitis four times in 2005 and 2007, the record lacks any evidence that she required hospitalization, intravenous treatment, or was resistant to treatment. *Id.* Moreover, Dr. Zavazava, after initially diagnosing MacPherson with antibody deficiency with normal immunoglobulins, NK cell deficiency, and recurrent infections, concluded later upon treatment, testing, and further examination that "we do not believe that [MacPherson's] symptoms are due to an immune deficiency or to recurrent infections."[5] The Court finds it significant that MacPherson's treating doctor, after treating and testing MacPherson, concluded that she did not have an immune deficiency or problem with recurrent infections, and rescinded that diagnosis.

Therefore, bearing in mind that "[m]erely being diagnosed with a condition named in a listing and meeting some of the criteria will not qualify a claimant for presumptive disability under the listing," the Court concludes that MacPherson is unable to show on the record before the Court, that she meets or equals Listing § 14.07. *McCoy*, 648 F.3d at 611-12; *see also Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("An impairment that manifests only some of [the Listing] criteria, no matter how severely, does not qualify."). Accordingly, the Court finds that the ALJ's determination at step three of the sequential evaluation, that MacPherson's immune antibody deficiency impairment does not meet or

---

[5] *See* Administrative Record at 686.

equal an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, is supported by substantial evidence on the record as a whole. *See Gates*, 627 F.3d at 1082.

### 2.   *Nebulizer and Frequent Absences*

MacPherson argues that the ALJ's RFC assessment is flawed and not supported by substantial evidence in the record as a whole. Specifically, MacPherson argues that the ALJ erred because she failed to: (1) address the amount of time using a nebulizer may interfere with MacPherson's ability to work a full-time job; and (2) consider the number of absences from full-time work that MacPherson might have due to the combination of her impairments. Additionally, MacPherson argues that because the RFC assessment is flawed, the hypothetical questions posed to the vocational expert are also flawed. MacPherson maintains that this matter should be remanded so that the ALJ may perform a proper RFC assessment and provide the vocational expert with accurate hypothetical questions.

When an ALJ determines that a claimant is not disabled, he or she concludes that the claimant retains the residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley*, 152 F.3d at 1059. The ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803; *see also Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (same). Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson*, 361 F.3d at 1070). While an ALJ must consider all of the relevant evidence when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some

support in the medical evidence of record." *Casey*, 503 F.3d at 697(citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

Additionally, hypothetical questions posed to a vocational expert, including a claimant's RFC, must set forth his or her physical and mental impairments. *Goff*, 421 F.3d at 794. "The hypothetical question must capture the concrete consequences of the claimant's deficiencies." *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001) (citing *Taylor v. Chater*, 118 F.3d 1274, 1278 (8th Cir. 1997)). The ALJ is required to include only those impairments which are substantially supported by the record as a whole. *Goose v. Apfel*, 238 F.3d 981, 985 (8th Cir. 2001); *see also Haggard v. Apfel*, 201 F.3d 591, 595 (8th Cir. 1999) ("A hypothetical question 'is sufficient if it sets forth the impairments which are accepted as true by the ALJ.' *See Davis v. Shalala*, 31 F.3d 753, 755 (8th Cir. 1994) (quoting *Roberts v. Heckler*, 783 F.2d 110, 112 (8th Cir. 1985).").

With regard to the ALJ's RFC assessment, MacPherson argues that the RFC assessment is flawed because the ALJ failed to consider the effects of (1) using a nebulizer, and (2) the combination of her impairments would have on her ability to work a full-time job. In determining a claimant's RFC, an ALJ is only required to base his or her assessment on relevant evidence. *See Guilliams*, 393 F.3d at 803. Here, the ALJ thoroughly considered the medical evidence of record.[6] While MacPherson correctly points out that the ALJ did not explicitly discuss her use of the nebulizer, the Court believes that the ALJ considered all of the relevant medical evidence when making her RFC assessment. In making this determination, the Court bears in mind that even though an ALJ is required to fully and fairly develop the record, he or she "'is not required to discuss every piece of evidence submitted.'" *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010) (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)). Furthermore,

---

[6] See Administrative Record at 20-25 (providing a thorough discussion of MacPherson's lengthy medical history).

failure of an ALJ to cite specific evidence is not an indication that he or she failed to consider such evidence. *Id.*

In particular, MacPherson's assertion that she "may need to be away from her workstation at unscheduled times for up to thirty minutes to use her nebulizer" is not supported by the record.[7]   For example, medical records from 2003 indicate that MacPherson was given a nebulizer, but there is no evidence as to how often she used it.[8] Similarly, from 2004 to 2008, there are multiple medical records that indicate MacPherson had a prescription for a nebulizer as needed, but there is no indication of how often she needed it, or used it.[9]   Significantly, in January 2005, Dr. Ann M. Metzger, M.D., a treating doctor, noted that MacPherson was not using her nebulizer, and suggested that she start using it.[10]   It appears that she used the nebulizer in February 2005, but there is no indication that she has used the nebulizer continuously since that time.[11]   In fact, in her administrative testimony, MacPherson stated that with regard to her nebulizer, "lately" she had been using it "everyday," about four times per day.[12]   MacPherson's testimony that "lately" she had been using her nebulizer indicates that she does not use it all of the time.

In her decision, the ALJ also stated that she considered MacPherson's impairments in combination when making her RFC determination.   Specifically, the ALJ stated that "[i]n making [the RFC] finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be consistent with the objective medical

---

[7] *See* MacPherson's Brief (docket number 11) at 16.

[8] *See* Administrative Record at 334-35.

[9] *Id.* at 506, 520, 522, 526, 530, 532, 534, 625,, 627, 629, 721, 725, 729, 775, 777.

[10] *See* Administrative Record at 544.

[11] *Id.* at 543.

[12] *Id.* at 44.

evidence and other evidence based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p."[13]   Furthermore, the ALJ's thorough discussion and consideration of MacPherson's medical history in making her RFC assessment, indicates that the ALJ considered the combination of her impairments[14].

Therefore, having reviewed the entire record, the Court finds that overall the ALJ properly considered the totality of MacPherson's medical records, observations of treating physicians, and MacPherson's own description of her limitations in making her RFC assessment for MacPherson.[15]   *See Lacroix*, 465 F.3d at 887.  Furthermore, the Court finds that the ALJ's decision is based on a fully and fairly developed record.  *See Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007) (providing that an ALJ also has a duty to develop the record fully and fairly).  Because the ALJ considered the medical evidence as a whole, the Court concludes that the ALJ made a proper RFC determination based on a fully and fairly developed record.  *See Guilliams*, 393 F.3d at 803; *Cox*, 495 F.3d at 618.

Furthermore, because the ALJ's RFC assessment was based on a proper consideration of MacPherson's medical records, observations of treating physicians, and MacPherson's own description of his limitations, and the ALJ's hypothetical questions to the vocational expert were based on the ALJ's RFC, the Court finds that hypothetical questions properly included those impairments which were substantially supported by the record as a whole.  *See Goose*, 238 F.3d at 985; *see also Forte v. Barnhart*, 377 F.3d 892, 897 (8th Cir. 2004) (an ALJ need only include those work-related limitations that he or she finds credible).  Therefore, the ALJ's hypothetical questions were not flawed or improper.  Accordingly, even if inconsistent conclusions could be drawn on this issue, the Court

---

[13] *Id.* at 20.

[14] *Id.* at 20-25.

[15] *Id.*

upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

## VI. CONCLUSION

The Court finds that the ALJ's determination at step three of the sequential evaluation, that MacPherson's immune antibody deficiency impairment does not meet or equal an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, is supported by substantial evidence on the record as a whole. Furthermore, the ALJ's RFC assessment and hypothetical questions to the vocational expert were based on a fully and fairly developed record and properly included those impairments which were substantially supported by the record as a whole. Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

## VII. ORDER

For the foregoing reasons, it is hereby **ORDERED**:

1.    The final decision of the Commissioner of Social Security is **AFFIRMED**;

2.    Plaintiff's Complaint (docket number 3) is **DISMISSED** with prejudice; and

3.    The Clerk of Court is directed to enter judgment accordingly.

DATED this _22nd_ day of November, 2011.

_____
JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA